## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JOSEPH MISCHLER, individually**<br>**and on behalf of those similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. 1:18-cv-2002 (TJK/GMH)** |
| **NOVAGRAAF GROUP BV, _et al._,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This dispute concerning documents over which Defendants have claimed attorney-client privilege and work-product protection was first raised in a motion to compel filed in July 2019. Since then, the Court has twice ordered the parties to confer to narrow the issues in dispute, with some success: the approximately 140 documents originally at issue have been whittled down to fewer than fifteen. Based on the briefing and the Court's _in camera_ review of the documents at issue, Plaintiff's motion is granted in part and denied in part.[1]

## I.        BACKGROUND

In this case, Plaintiff Joseph Mischler claims, among other things, that Defendants Novagraaf Group BV ("Novagraaf"), a Dutch patent and trademark consultancy with operations in the District of Columbia, and its Chief Executive Officer ("CEO"), Lutgarde Liezenberg, failed to pay Plaintiff wages and retaliated against him both for complaining about that failure and for

---

[1] The relevant docket entries considered by the Court for resolution of this motion are Plaintiff's motion to compel (ECF No. 74), Defendants' opposition and exhibits (ECF No. 75 through 75-4); and Plaintiff's reply (ECF No. 79).

filing this lawsuit. ECF No. 1-2 at 1. Defendants have counterclaimed, alleging that Plaintiff misrepresented to them the amount of business he generated for Novagraaf. ECF No. 18 at 5. Plaintiff's previous motion to compel production of material that Defendants had withheld as privileged, filed on July 29, 2019, challenged 139 documents reflected on the privilege log Defendants had provided in April 2019 (the "April Privilege Log"), among other things. ECF No. 39-1 at 1–6; ECF No. 39-3. By the time Plaintiff filed that motion, Defendants had produced an updated privilege log (the "July Privilege Log") on July 18; however, "the new privilege log did not correlate to the initial privilege log." ECF No. 39-1 at 5. For example, the July Privilege Log had fewer entries, in part because some documents had been recently produced, but also allegedly as a result of the omission of duplicate documents that were inadvertently entered on the April Privilege Log; the July Privilege Log disclosed different document descriptions for some communications than did the April Privilege Log; and the July Privilege Log listed a different basis for withholding certain documents than that listed on the April Privilege Log. ECF No. 41 at 3–4, 10–12; ECF No. 48 at 4–7.

Because of the confusion created by the two privilege logs, which made it difficult to determine which documents were still at issue and on what basis, on September 5, 2019, the Court ordered Defendants to produce a new, clarified privilege log (the "September 5 Order"). The new privilege log was to

> list all of the documents included on the April Privilege Log, along with the original information included in the "date," "from", "to," "cc," "general description" and "basis of privilege" columns of the April Privilege Log. For each entry, it shall also include (1) whether Plaintiff sought production of the document in his highlighted version of the April Privilege Log, (2) whether the document has been produced either before or after the promulgation of the April Privilege Log, and (3) whether the entry is a duplicate that was inadvertently included on the April Privilege Log and therefore not included on the July Privilege Log. Further, the September Privilege Log shall make clear all changes to the general description of the

document and to the basis for withholding the document between the April Privilege Log and the July Privilege Log.

ECF No. 57 at 2–3. In addition, the September 5 Order required the parties to file a joint status report by September 19, 2019, updating the Court on whether the new privilege log had "contracted the universe of disputed documents or otherwise narrowed the issues related to Plaintiff's motion to compel," and to identify any documents still at issue and the bases for Plaintiff's challenges to withholding those documents. *Id.* at 3. Defendants timely filed an updated privilege log that complied with the September 5 Order (the "September Privilege Log").[2] ECF No. 59-1.

On September 19, 2019, the parties failed to file a joint status report; instead they filed dueling submissions that made clear that they had not attempted to "contract[] the universe of disputed document or otherwise narrow[] the issues" presented to the Court. ECF No. 57 at 3; *see* ECF Nos. 64–65. The Court therefore issued an Order requiring the parties to "meet and confer to attempt to resolve or at least narrow this dispute over privilege," denying the pending motion to compel without prejudice, and setting a date by which Plaintiff should file a "motion to compel elucidating the remaining disputes." ECF No. 70 at 3–4.

Plaintiff filed this motion to compel, which ultimately identifies twelve documents reflected on the September Privilege Log that he believes have been improperly withheld.[3] ECF

---

[2] In a later submission to the Court, Plaintiff argued that the September Privilege Log did not comply with the September 5 Order because it did not include a column that identified whether a document included on the September Privilege Log had been produced "either before or after the promulgation of the April Privilege Log." ECF No. 65 at 2. However, the September Privilege Log did include a column that divulged the "Production Status" of the documents listed on the log—that is, whether those documents had been produced or were still being withheld. ECF No. 59-1. That relates the crucial information—the documents over which a claim of privilege had been withdrawn and the documents that were still allegedly privileged—and fully complies with the September 5 Order.

[3] The initial memorandum in support of the motion challenges the withholding of fifteen documents and also notes that an additional twelve documents "remain under discussion" and are not at issue in this motion. ECF No. 74-1 at 2. Defendants' opposition asserts that three of those fifteen documents have been produced, and Plaintiff's reply agrees with that representation. ECF No. 75 at 5; ECF No. 79 at 1 & n.1. Thus, there are twelve documents at issue in this motion.

No. 74-1 at 2.  According to the September Privilege Log, each of those documents has been withheld on the basis of work-product protection.[4]  ECF No. 59-1 at 1–3.  Defendants' opposition claims that some of those twelve documents are shielded from discovery by attorney-client privilege and some by work-product protection.  ECF No. 75.  After Plaintiff filed his reply (ECF No. 79), the Court noted that Defendants had failed to submit competent evidence to support their explanations as to why attorney-client privilege or work product protection covered the emails at issue—such as, for example, a declaration from an attorney asserting that she had reviewed the withheld emails and could attest to the accuracy of the descriptions of the content of those emails included in the opposition, or an affidavit from one or more participants in the email chains "describing the confidential nature of the documents," *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *2 (N.D. Cal. Apr. 18, 2003).  Although failure to establish a privilege or other protection with competent evidence is a sufficient reason to grant a motion to compel, *see, e.g.*, *In re Veiga*, 746 F. Supp. 2d 27, 38, 41–42 (D.D.C. 2010), a court may instead allow the proponent of the privilege or protection to submit evidence in the form of the documents themselves for *in camera* review, *see, e.g.*, *Alexander v. FBI*, 192 F.R.D. 42, 45–46 (D.D.C. 2000) (noting that, after the court determined that the proponent of the privilege had failed to establish it by competent evidence, the court reviewed the documents at issue *in camera* to determine if they were privileged).  Therefore, in light of the facts that Plaintiff had previously

---

[4] More precisely, as reflected on the September Privilege Log, Defendants changed the bases for withholding certain of the documents at issue between the April Privilege Log and the July Privilege Log.  For example, the document identified in this motion's papers as Document No. 1, an email dated April 26, 2018, from Novagraaf's Human Resources Director ("HR Director"), Herke Fortuin, to the company's Chief Compliance Officer ("CCO"), Gerard Delaney, was withheld as protected by both attorney-client privilege and work-product protection according to the April Privilege Log, but only on the basis of work-product protection on the July Privilege Log; Document No. 2, an email from HR Director Fortuin to CEO Liezenberg and CCO Delaney also dated April 26, 2018, was identified as attorney-client privileged on the April Privilege Log and as work product on the July Privilege Log.  ECF No. 59-1 at 1.  However, for each of the documents at issue here, the September Privilege Log identifies work-product protection as the only claimed basis.  Defendants' attempt to change course again and claim in their opposition to this motion that certain documents are attorney-client privileged is discussed below.

asked the Court to review the documents *in camera* and that the number of documents at issue had shrunk to twelve, the Court ordered Defendants to lodge the withheld emails with Chambers for *ex parte*, *in camera* review.  (ECF No. 77).

## II.    LEGAL STANDARD

A party seeking discovery may move under Rule 37 of the Federal Rules of Civil Procedure for an order "compelling an answer, designation, production or inspection" from a party who fails to produce documents requested pursuant to the Federal Rules.  Fed. R. Civ. P. 37(a)(3). Generally, "[t]he party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete." *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007).  "However, a party asserting a privilege or work-product protection bears the burden to establish that the privilege applies." *United States v. All Assets Held at Julius Baer & Co.*, 169 F. Supp. 3d 54, 56 (D.D.C. 2015).  A party meets that burden by "'adduc[ing] competent evidence in support of its claims,' something beyond 'conclusory statements, generalized assertions, and unsworn averments of its counsel.'"  *FTC v. Boehringer Ingelheim Pharm., Inc.*, 180 F. Supp. 3d 1, 16 (D.D.C. 2016) (quoting *In re Veiga*, 746 F. Supp. 2d at 33–34; *see also, e.g.*, *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 127 (D.D.C. 2012) (quoting *Veiga*, 746 F. Supp. 2d at 33–34); *Alexander*, 192 F.R.D. at 45 ("[T]he party asserting the attorney-client privilege . . . must demonstrate 'the applicability of the privilege by way of affidavits or other competent evidence.'" (quoting *Alexander v. FBI*, 186 F.R.D. 102, 111 (D.D.C. 1998))).

### A.    Work-Product Protection

The work-product doctrine "protect[s] the mental processes and opinions of the drafter of the document in question," as well as "factual material that is bound up with the drafter's opinions and recommendations." *All Assets*, 169 F. Supp. 3d at 57.  Under Rule 26(b)(3)(A), which

"codified in substantial part" the federal work-product doctrine, "a party generally may not discover 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative.'" *FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting Fed. R. Civ. P. 26(b)(3)(A)). That is, it is not necessary for documents to have been prepared by an attorney or under the direction of an attorney, "so long as they were clearly prepared in anticipation of litigation" by a party's representative. *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 77 (D.D.C. 2003) (collecting cases); *see also Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977) ("While the 'work product' may be, and often is, that of an attorney, the concept of "work product" is not confined to information or materials gathered or assembled by a lawyer."); *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001) ("[D]ocuments prepared in anticipation of litigation need not be created at the request of an attorney."); *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, No. 95 Civ. 4856, 1996 WL 490710, at *2 (S.D.N.Y. Aug. 27, 1996) (same).

In this Circuit, material is generated in anticipation of litigation if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 315 F.R.D. 103, 108–09 (D.D.C. 2016) (emphasis added) (quoting *Boehringer Ingelheim*, 778 F.3d at 149). The litigation "need not be actual or imminent; it need only be 'fairly foreseeable.'" *Hertzberg*, 273 F. Supp. 2d at 78 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980)). Importantly, the D.C. Circuit's "because of" test does not require that "anticipation of litigation be the 'primary motivating purpose' behind the document's creation"; rather "a document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared

because of the prospect of litigation." *United States v. Deloitte LLP*, 610 F.3d 129, 136–138 (D.C. Cir. 2010) (rejecting the "more demanding" primary motivating purpose test in favor of the "more lenient 'because of' test"). However, "[w]here a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available." *Boehringer Ingelheim*, 778 F.3d at 149 (quoting *Deloitte,* 610 F.3d at 138).

Moreover, "the work product privilege is a qualified privilege which may be overridden by a showing of substantial need by the requesting party." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1302 (D.C. Cir. 1980). More specifically, so-called "fact work product," which is material prepared in anticipation of litigation that does not "reveal 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation,'" is discoverable where "the party seeking disclosure 'has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *All Assets*, 315 F.R.D. at 109 (first quoting Fed. R. Civ. P. 26(b)(3)(B), then quoting Fed. R. Civ. P. 26(b)(3)(A)(ii)). On the other hand, opinion work product—that is, material that does reveal the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative—is "virtually undiscoverable." *Id.* (quoting *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir.1997)). Although material created by non-attorneys may be protected as opinion work product, in order to be so protected, it must be closely intertwined with legal analyses, such as by "necessarily reflect[ing] a focus chosen by [a] lawyer." *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 429, 432 (D.D.C. 2014) (quoting *United States v. Clemens*, 793 F. Supp. 2d 236, 252 (D.D.C. 2011)); *Deloitte*, 610 F.3d at 139 (remanding case to district court to view documents *in camera*

to determine whether analyses by non-attorneys were "so intertwined with the legal analysis as to warrant protection under the work-product doctrine").

### B. Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between clients and their attorneys made for the purpose of securing legal advice or services." *FTC v. Boehringer Ingelheim Pharm., Inc.*, 180 F. Supp. 3d 1, 16 (D.D.C. 2016), *aff'd*, 892 F.3d 1264 (D.C. Cir. 2018). The D.C. Circuit has "rejected a strict 'but for' requirement under which a communication could not be privileged if there was any purpose behind it other than seeking or providing legal advice"; instead, a communication is entitled to attorney-client privilege if "'one of the significant purposes' of the communication was to obtain or give legal advice." *Id.* (quoting *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757–60 (D.C. Cir. 2014)). Although the underlying facts on which an attorney-client communication rests are generally not privileged, purely factual exchanges can be protected when, among other things, they are provided at the request of an attorney for the purpose of enabling legal advice. *Id.* Indeed, even communications among corporate employees who are not attorneys are entitled to protection if the purpose of those communications was to marshal facts for counsel to use in rendering legal advice. *Id.* at 34; *see also AT & T*, 2003 WL 21212614, at *3 ("Communications between non-lawyer employees about matters which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege."); *Santrade, LTD v. General Electric Co.*, 150 F.R.D. 539, 543 (E.D.N.C. 1993) ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds.").

## III. DISCUSSION

As directed in the October 5 Order, Plaintiff has separately identified the communications—each of which is an email string—that he alleges were improperly withheld. Helpfully, he has also assigned numbers to each of them. Three communications are dated April 26, 2018 (Document Nos. 1–3); one is dated July 15, 2018 (Document No. 4); one is dated July 16, 2018 (Document No. 5); five are dated July 23, 2019 (Document Nos. 6–10); one is dated July 24, 2018 (Document No. 11); and one is dated July 25, 2019 (Document No. 12). Each of the emails at issue is a communication among one or more of the following Novagraaf personnel, none of whom is an attorney: CEO Liezenberg, CCO Delaney, Chief Financial Officer ("CFO") Michel Elsenga, and HR Director Fortuin.

Critical to the work-product analysis is determining when Defendants reasonably anticipated litigation with Plaintiff. *See, e.g.*, *Hertzberg*, 273 F. Supp. 2d at 78. According to the operative complaint, Plaintiff began complaining about unpaid wages in January 2017 and continued to do so periodically through April 2018 and after. ECF No. 51 at 7–8. Plaintiff asserts, for example, that he complained to CEO Liezenberg, CCO Delaney, and/or CFO Elsenga about wages owed to Plaintiff twice in January 2017; once each in March, April, and May, 2017; in January 2018; and on April 17, 2018. ECF No. 51 at 7–8. Entries on the September Privilege Log relating to documents at issue here (Document Nos. 1–3) indicate that, by April 26, 2019, Defendants were discussing terminating Plaintiff. ECF No. 59-1 at 1 (describing withheld documents as "Emails re termination letter"). Plaintiff further alleges that, in retaliation for Plaintiff's complaints, Defendants threatened on April 30, 2018, to terminate him. ECF No. 51 at 8. On June 25, 2018, Defendants did terminate Plaintiff, with an effective date of July 27, 2018. *Id.*

According to emails that Defendants have filed along with their opposition to Plaintiff's motion to compel, the parties attempted to negotiate the terms of Plaintiff's termination in June and July of 2018. Those emails are particularly relevant to the issue of whether the documents withheld from that period are protected as work product. The first is a July 9, 2018 email from CCO Delaney to CEO Liezenberg and CFO Elsenga relating that Plaintiff "rejects [Novagraaf's] offer and will turn this over to his lawyers on a contingency basis." ECF No. 75-3 at 2. The second is a July 23, 2018 email from Plaintiff to HR Director Fortuin making certain demands about payment of commissions and a buy-out of Plaintiff's equity stake and stating that if Defendants "choose not to live upto [sic] the agreements you have entered into with me, please advise who within the organization can receive a legal summons this week." ECF No. 75-2 at 2. The third is a collection of several emails beginning on July 11, 2018, and ending on July 26, 2018, largely comprising communications both among Novagraaf personnel and between Novagraaf personnel and Plaintiff discussing the terms of Plaintiff's termination. ECF No. 75-4. Those email strings include Plaintiff's July 23, 2018 email quoted above, as well as communications post-dating that email over which Defendants do not claim privilege. *Id.* Plaintiff filed this action in D.C. Superior Court on July 26, 2018, and it was removed to this Court in August 2018. ECF Nos. 3, 3-2. These facts establish that Defendants reasonably anticipated litigation over Plaintiff's termination in early July 2018. Defendants do not argue in their motion papers that they could reasonably foresee litigation over Plaintiff's termination earlier than that.

A.    **Document Nos. 1–3 (Emails from April 26, 2018)**

Document Nos. 1–3 are each dated April 26, 2018, prior to the point at which Defendants reasonably anticipated litigation with Plaintiff. Defendants assert that they all "stem from the same email chain." ECF No. 75 at 9. The emails are neither sent nor copied to attorneys, but are

distributed among corporate officers and employees—specifically, CEO Liezenberg, CCO Delaney, CFO Elsenga, and HR Director Fortuin. Document No. 1, which is from HR Director Fortuin to CCO Delaney, forwards two emails between the HR Director and Rhona Anderson, Novagraaf's outside human resources consultant. Defendants assert that the document "discuss[es] the need for an attorney to review Plaintiff's termination letter because there are legal issues to consider." *Id.* Document No. 2—identified in the September Privilege Log as an email from HR Director Fortuin to CCO Delaney and CEO Liezenberg—is described as an email forwarding the emails between the HR Director and Ms. Anderson and "identifying potential legal issues for which legal advice should be sought." *Id.* at 10. Document No. 3, from CCO Delaney to the HR Director, CEO Liezenberg, and CFO Elsenga, is described as CCO Delaney's reply to the HR Director's email—that is, the CCO's reply to Document No. 2. *Id.* Defendants argue that Document Nos. 1, 2, and 3, "are communications between corporate employees working together to compile facts for attorneys to use in rendering legal advice" and are therefore protected by the attorney-client privilege.[5] *Id.* They make no claim here that the documents constitute work product.

However, from July 18, 2019, when Defendants produced the July Privilege Log; through August 8, 2019, when they filed their opposition to Plaintiff's prior motion to compel and September 11, 2019, when they filed the September Privilege Log; and until they submitted their opposition to Plaintiff's current motion to compel, Defendants have relied exclusively on work product as the source of the protection of these three documents. ECF No. 41 at 11; ECF No. 41-7 at 2; ECF No. 59-1 at 1. To be sure, the April Privilege Log claimed that Document Nos. 1 and 3 were protected as both attorney-client privileged and as work product and that Document No. 2

---

[5] Defendants do not assert that these emails include an attorney as an addressee.

was attorney-client privileged, but those claims to attorney-client protection were abandoned in both the July Privilege Log and the September Privilege Log. ECF No. 49-13 at 2 (April Privilege Log); ECF No. 41-7 at 2 (July Privilege Log); ECF No. 59-1 at 1 (September Privilege Log). Appropriately, Plaintiff relied on the assertion of work product protection over these documents in formulating his motion to compel. ECF No. 74-1 at 3–5 (arguing that Document Nos. 1–3 were improperly withheld as work product). Now, *in their opposition to Plaintiff's motion*, Defendants have changed course, abandoning their claim that the documents are protected as work product, *see, e.g.*, *Felder v. Wash. Metro. Area Transit Auth.*, 153 F. Supp. 3d 221, 223 n.2 (D.D.C. 2015) (deeming an argument that a document was protected as work product abandoned when the party claimed that protection in an earlier motion but not in the motion then before the court), and attempting to assert attorney-client privilege over them. The assertion comes too late.

Failure to timely identify the nature of the privilege or protection that is claimed over withheld documents may be deemed a waiver (or forfeiture) of the privilege or protection. *See, e.g.*, *In re Honeywell Int'l Inc. Sec. Litig.*, 230 F.R.D. 293, 299 (S.D.N.Y. 2003); *see also, e.g.* Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment; *Gen. Elec. Co. v. Johnson*, No. 00-cv-2855 (JDB), 2007 WL 433095, at *3 (D.D.C. Feb. 5, 2007); *Banks v. Office of Senate Sergeant-at-Arms*, 233 F.R.D. 1, 9 (D.D.C. 2005). In *Honeywell*, for example, the plaintiffs filed a motion to compel production of certain documents withheld as privileged. 230 F.R.D. at 298. During briefing on the motion, the defendant submitted a new privilege log "engraft[ing] an assertion of attorney work product protection for certain documents previously identified as protected solely by the attorney-client privilege." *Id.* Judge Pauley of the U.S. District Court for the Southern District of New York found that "waiver [was] warranted on the particular facts and circumstances of [the] case":

> Twice in May 2003, [the defendant] interposed the attorney-client privilege alone, and decided not to stake any claim of attorney work product privilege, concerning the documents at issue. Tellingly, [the defendant] had asserted attorney work product privilege for other documents on the May logs. Plaintiffs were entitled to rely on [those] privilege assertions when they served a motion to compel . . . . More importantly, [the defendant] waited three weeks after plaintiffs filed their motion to compel to revise [the privilege] log to add the new assertions of attorney work product protection. Those new assertions only surfaced on the August 8 log after [the defendant] filed its opposition to plaintiffs' motion to compel. Parties should not be permitted to re-engineer privilege logs to align their privilege assertions with their legal arguments.

*Id.* at 299. He therefore granted the motion to compel production of the documents to which the defendant had "added a claim of work product protection." *Id.* at 300.

Here, the situation is very similar to that before the court in *Honeywell*. Defendants originally claimed attorney-client privilege over these three documents in the April Privilege Log. However, in the July Privilege Log, the opposition to Plaintiff's prior motion to compel, and the September Privilege Log, they abandoned that as a basis for withholding the documents and claimed that they were protected only as work product. Then, after Plaintiff had filed this motion to compel the production of documents based on the information in the September Privilege Log that these documents were protected as work product, Defendants reversed course again and, without notice to the Court or Plaintiff and without explanation in their opposition to the motion to compel, asserted that the documents were protected *only* by the attorney-client privilege, thus "re-engineer[ing]" their assertions of privilege to "align" them with their legal arguments.

Defendants' maneuver appears strategic. When faced with crafting a targeted and convincing argument as to why the April 26, 2018 emails were protected from disclosure, Defendants seem to have realized—likely because of the timing of the emails, which were composed prior to Plaintiff's termination and months before he sued—that pressing work-product immunity would be unsuccessful because Defendants did not, at that time, have a reasonable basis

to anticipate litigation over Plaintiff's termination. They therefore changed tactics and endorsed attorney-client privilege over those email chains. However, courts have not looked favorably on litigants that, having asserted that documents must not be disclosed on one basis, mutate their arguments at the last moment to avoid an adverse ruling requiring production. *Cf., e.g.*, *Johnson*, 2007 WL 433095, at *4 (finding privilege waived where the proponent of privilege asserted a new basis for non-disclosure in light of prior rulings that rejected its other grounds for withholding the document, finding that the strategy "smack[ed] of an attempt . . . to get a second bite at the apple by 're-engineering' its privilege log to advance legal arguments that it failed to make at earlier stages of the litigation"). Moreover, Defendants have not offered any excuse or explanation for their gambit, which hardly redounds to their credit. In this situation, it is difficult to avoid the conclusion that Defendants have engaged in the kind of gamesmanship decried by the cases cited above. The Court therefore finds that Defendants have waived their claim of attorney-client privilege over these documents.

Even if Defendants had not waived their claim of attorney-client privilege, the documents would still be discoverable because Defendants have not established that they are protected. Defendants are correct that discussions among non-attorney corporate personnel can be protected under the attorney-client privilege "if they reflect matters about which the client intends to seek legal advice" (ECF NO. 75 at 4), but there are some important conditions. First, as this Court observed in *Boehringer-Ingelheim*, such communications or analyses are protected when they are made at the behest of an attorney to assist in the provision of legal advice and are kept confidential. 180 F. Supp. 3d at 32–33 (asserting that "[t]he D.C. Circuit [has] required merely that the non-attorney employees understand that their investigation was requested by the company's legal department and that the information found would be kept confidential," and noting that, in the

disputes before the Court, attorneys had requested the PowerPoints, spreadsheets, and analyses at issue). Here, the emails themselves do not indicate that they were created at the request of counsel in order to provide legal advice and there is no accompanying affidavit from any participant asserting that counsel directed them to collect information for that purpose. Thus, Defendants have not met their burden of establishing that as a basis for privilege. *See, e.g.*, *All Assets*, 169 F. Supp. 3d at 56 (D.D.C. 2015) ("[A] party asserting a privilege or work-product protection bears the burden to establish that the privilege applies."). Second, although *Boehringer Ingelheim* also quotes a case from the U.S. District Court for the Northern District of California stating that "[c]ommunications between non-lawyer employees about matters which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege," *id.* at 34 (quoting *AT&T*, 2003 WL 21212614, at *3), that case made clear that there must be some showing that the parties not only intended to seek legal advice, but actually did so. As a matter of fact, the *AT&T* court made that explicit: "Communications containing information compiled by corporate employees for the purpose of seeking legal advice *and later communicated to counsel* are protected by the attorney-client privilege." *AT&T*, 2003 WL 21212614, at *3 (emphasis added). Such a requirement makes abundant sense, as factual information not communicated to an attorney cannot aid in that attorney's provision of legal advice. Here, again, the emails themselves do not establish that the issues discussed were ultimately communicated to an attorney. To the contrary, they indicate that the executives were unsure whether advice from an attorney was needed.

Defendants assert that Document No. 3, the email from CCO Delaney to CEO Liezenberg, HR Director Fortuin, and CFO Elsenga is protected because it mentions that CFO Elsenga had already sought "legal advice . . . on the issues being discussed." ECF No. 75 at 10. The email does, indeed, assert that CFO Elsenga "ha[d] taken legal advice on this," which seems to refer to

legal advice regarding potentially similar deals with other former employees. However, Defendants argue only that this email is a "communication between corporate employees working together *to compile facts for attorneys to use in rendering legal advice*." ECF No. 75 at 10 (emphasis added). Again, there is no indication that any facts included in Document No. 3 were communicated to an attorney. Rather, it appears that the legal advice pre-dated the alleged compilation of facts. "It would be disingenuous to allow [Defendants] to cloak [this communication] in the attorney-client privilege by claiming it was necessary for legal advice *after* that advice had already been delivered." *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 595 (S.D.N.Y. 2015). Moreover, courts have found that "documents that reflect only that a non-attorney spoke to or received advice from an attorney and then acted are discoverable because they do not reflect privileged communications." *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 190 (D.D.C. 2014). Importantly, this is not a communication in which a non-attorney transmitted legal advice received from a lawyer to another non-attorney; instead, "[t]he email is specifically directed to another person—a non-attorney—and the email specifically (and only) seeks information from that person." *Jordan v. U.S. Dep't of Labor*, 308 F. Supp. 3d 24, 43 (D.D.C. 2018) (finding such an email non-privileged), *aff'd*, No. 18-5128, 2018 WL 5819393 (D.C. Cir. Oct. 19, 2018); *see also Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Tr. Corp.*, 5 F.3d 1508, 1514 (D.C. Cir. 1993) ("We stressed that the critical factor for purposes of the attorney-client privilege was that the communication be made 'in confidence for the purpose of obtaining *legal* advice *from the lawyer*.'" (some emphasis omitted) (quoting *FTC v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980))). Defendants have not sufficiently explained why these emails should be shielded from disclosure. In sum, Defendants have again fallen short

in meeting their burden to establish that the documents constitute communications protected by attorney-client privilege.[6]

Thus, the Court finds that Defendants have waived the argument that Document Nos. 1–3 are protected by attorney-client privilege and that, even if they had preserved that argument, it would have been unsuccessful. Because Defendants do not contend that the documents should be withheld as work product,[7] they have failed to meet their burden to show that the documents should not be produced. *See, e.g.*, *All Assets*, 169 F. Supp. 3d at 56 (D.D.C. 2015) ("[A] party asserting a privilege or work-product protection bears the burden to establish that the privilege applies."); *Honeywell*, 230 F.R.D. at 298 ("[The defendant] offers no support for the assertion of attorney-client privilege . . . and as a result fails to satisfy its burden to establish the privilege."). Therefore, Document Nos. 1–3 shall be produced to Plaintiff within seven days of the date of this Memorandum Opinion and Order.

### B.   Document Nos. 4–5 (Emails from July 15 & 16, 2018)

These two emails are part of a chain among CEO Liezenberg, CFO Elsenga, CCO Delaney, and HR Director Fortuin. The first was sent on July 15, 2018, by CCO Delaney to the other three participants; the second was sent on July 16, 2018, by HR Director Fortuin to the other three

---

[6] Defendants contend that the fact that certain of these emails included an HR consultant "is insufficient to destroy the privilege." ECF No. 75 at 10. Their argument consists of a single sentence and a single case citation. *Id.* The cited case recognized attorney-client privilege over communications shared by a corporation with its public relations and government affairs consultants where the proponent of the privilege provided an affidavit stating that its corporate counsel worked with the consultants as if they were full-time employees of the corporation and that the consultants were an integral part of the team assigned to deal with the corporation's litigation and legal strategies. *FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002)). In that circumstance, the D.C. Circuit found that it need not distinguish between corporate employees and the consultants. *Id.* Here, Defendants have provided no such affidavit, and the relationship between Novagraaf and the HR consultant is consequently unclear. This is therefore another reason that Defendants have failed to meet their burden to show that these communications are privileged.

[7] As noted above, not only have Defendants abandoned their claim that the communications are protected as work product, but they have failed to establish that at the time the communications were made, they reasonably anticipated litigation with Plaintiff, thus dooming any potential claim to such protection.

participants. The emails clearly follow-up on the July 9, 2018 email in which CCO Delaney relates that Plaintiff threatened to "turn [the matter] over to his lawyers." ECF NO. 75-3 at 2. The emails discuss the threat of litigation and possible ways to forestall it. As such, they constitute work-product. *See, e.g.*, *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004) (recognizing that material created to avoid litigation can constitute work product); *Gen. Elec. Co. v. Johnson*, No. 00-cv-2855(JDB), 2007 WL 433095, at *21 (D.D.C. Feb. 5, 2007) (finding that a memo that was "clearly prepared with a particular settlement negotiation in mind and in an effort to avoid litigation with a specific party" was properly withheld as work product); *Fitzpatrick v. Am. Int'l Grp., Inc.*, No. 10 CIV. 142 MHD, 2011 WL 335672, at *4 (S.D.N.Y. Jan. 28, 2011) ("[T]he fact that some of [a consultant's] labors assisted defendants in conducting settlement discussions in an effort to avoid anticipated litigation does not take the documents outside the work-product universe."). More specifically, Document No. 4 includes CCO Delaney's observation that the terms of the offer then before Plaintiff would cause Plaintiff to sue (as he had previously threatened) and suggests alternatives that might avoid that outcome. In Document No. 5, HR Director Fortuin responds with his concerns about the potential terms of any negotiation. Although the HR Director's email contains some statements that appear to involve business concerns, the tenor and circumstances of the communications—specifically, the fact that Document No. 5 directly responds to concerns in Document No. 4 that focus on avoiding litigation—indicate that these documents were "prepared because of the prospect of litigation," even if some parts may have had a business purpose. *Deloitte*, 610 F.3d at 138 ("[A] document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation.").

Defendants appear to argue that the communications are fact work product rather than opinion work product. They include factual matter gathered in anticipation of litigation, which is protected as fact work product. To the extent that they reveal the mental impressions or analyses of these non-lawyers, there is no showing that those impressions or analyses are closely intertwined with an attorney's analysis or shaped by legal advice from an attorney; they therefore do not merit the more stringent protection of opinion work product. *See Deloitte*, 610 F.3d at 139; *Landis*, 303 F.R.D. at 432.

### C.    Document Nos. 6–10 (Emails from July 23, 2018)

These five emails from July 23, 2018, are part of a chain that begins with Plaintiff's email of the same date to CCO Delaney and HR Director Fortuin in which he lays out his demands regarding payment of commissions and repayment of his equity interest and states that if Novagraaf does not "live upto [sic] the agreements," they should advise him to whom to address a summons. ECF No. 75-2. All of the emails are among the CFO, CCO and HR Director; specifically, Document Nos. 6 and 8 are sent by HR Director Fortuin to CCO Delaney and CFO Elsenga, Document 7 is sent by CFO Elsenga to CCO Delaney and HR Director Fortuin, Document No. 9 is sent by HR Director Fortuin to CFO Elsenga and CCO Delaney, and Document No. 10 is sent by CCO Delaney to CFO Elsenga and copies HR Director Fortuin.

Document Nos. 7–10 are fact work product. They each deal with the logistics of obtaining counsel if Plaintiff files an action and thus were clearly created in anticipation of litigation.

Document No. 6 is more problematic. In it, HR Director Fortuin responds to the demands included in Plaintiff's July 23, 2018 email. With the exception of a single line (designated as point number 4 in the email), his responses appear to be directed toward continued negotiation with Plaintiff on the terms of his termination. Although HR Director Fortuin is clearly aware of the

threat of litigation, his points are not focused on the prospect of litigation. Instead, this email appears to be a communication that would have been composed in the same way (with the exception of point number 4) even in the absence of that threat. Indeed, in content, it is similar to emails that Defendant has already produced to Plaintiff. Without an affidavit from HR Director Fortuin explaining in some detail why the communication should be protected as work product, the undersigned cannot conclude that it is. Thus, again, Defendants have failed to meet their burden to establish that the email constitutes work product. Therefore, it shall be produced to Plaintiff with the one line of text after point number 4 in the email redacted.

### D.     Document Nos. 11–12 (Emails from July 24 & 25, 2018)

Like Document Nos. 6–10, Document Nos. 11–12 are part of another email chain that begins with Plaintiff's July 23, 2018 email described above. Document No. 11, dated July 24, 2018, is from CCO Delaney to HR Director Fortuin, and Document No. 11, dated July 25, 2018, is from HR Director Fortuin to CCO Delaney. More specifically, the withheld emails are intra-company communications that follow an email (produced to Plaintiff) that responds to Plaintiff's own July 23, 2018 email laying out his demands and asking "who within the organization can receive a legal summons." ECF No. 75-2 at 2. They discuss the answer to Plaintiff's question regarding a summons and are thus clearly created in anticipation of litigation. Like Document Nos. 4–5 and 7–10, they are fact work product.

### E.     Substantial Need

The Court has found that Document Nos. 4–5, a small part of Document No. 6, and Document Nos. 7–12 constitute fact work product. As noted, however, fact work product is discoverable if the party moving to compel its production can show "substantial need" and that he cannot obtain its equivalent without "undue hardship." Fed. R. Civ. P. 26(b)(3). The D.C. Circuit

has held that "a moving party's burden is generally met if it demonstrates that the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and 'special circumstances' excuse the movant's failure to obtain the requested materials itself." *Boehringer Ingelheim*, 778 F.3d at 155.

Plaintiff has not established substantial need under that test. He argues that he satisfies the requirements because (1) "the communications go to the heart of [his] claims," (2) "[t]he communications at issue are among Defendant's agents, discussing the issues that form the basis for [his] retaliation claim . . . and the basis for [his] defense against [Defendants'] counterclaim," (3) the communications "are admissions by a party opponent that can be obtained from no other source," and (4) the prosecution of his claims and defense against Defendants' counterclaim "will be hindered by [his] inability to obtain the withheld documents." ECF No. 79 at 7.

Taking those contentions in order, the first and second merely indicate that the communications are relevant to Plaintiff's claims. As an initial matter, Document Nos. 7–12 and the portion of Document No. 6 that will be redacted could not reasonably be considered "likely to make a material fact more or less likely," *Intervet, Inc. v. Merial Ltd.*, 256 F.R.D. 229, 232 (D.D.C. 2009), because they deal exclusively with the logistics of litigation rather than any substantive issue in this case; thus, only Document Nos. 4–5 could potentially be considered relevant under that standard. More fundamentally, however, relevance is a necessary, but not sufficient, condition for production of work product. *See Boehringer Ingelheim*, 778 F.3d at 155; *see also United States v. ISS Marine Servs.*, 905 F. Supp. 2d 121, 133 (D.D.C. 2012) ("Insofar as work product contains 'relevant and nonprivileged facts,' a party may obtain that work product 'upon a showing of substantial need for the materials and an undue hardship.'" (internal citations omitted) (first

quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), then quoting *Vinson & Elkins*, 124 F.3d 1304, 1307 (D.C. Cir. 1997))).  Those assertions do not, therefore, get Plaintiff very far.

The third contention is merely conclusory.  Plaintiff does not explain why he is unable to obtain these putative "admissions by a party opponent" from another source.  Indeed, as Defendants point out, he has had or will have the opportunity to depose CCO Delaney, CFO Elsenga, and CEO Liezenberg so that he "can readily obtain the facts contained in these documents without undue hardship."  *See, e.g.*, *Boehringer Ingelheim*, 778 F.3d at 155 (indicating that special circumstances for producing fact work product do not exist where the litigant seeking disclosure has deposed the witnesses who made the communications (citing *Hauger v. Chicago, Rock Island & P.R. Co.*, 216 F.2d 501, 505–06 (7th Cir. 1954))); *In re Int'l Syst. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240–41 (5th Cir. 1982) (agreeing with "the general proposition that discovery of work product will be denied if a party can obtain the information he seeks by deposition" and stating that the party seeking disclosure of the fact work product must make a "particularized showing" that the information will not be available through other means "before production can be ordered by the district court").

The fourth contention is similarly conclusory, as well as overbroad.  The mere fact that withholding privileged information will "hinder" the prosecution of or defense against a claim is not sufficient to demonstrate substantial need.  If it were, that would eviscerate the protection for fact work product because withholding *any* relevant material pursuant to a privilege or other protection has the potential to deprive a litigant of information helpful to his case.  In short, Plaintiff's arguments are simply too general and conclusory to meet his burden of showing substantial need.

### IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's motion to compel (ECF No. 74) is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that Defendants shall produce Document Nos. 1–3 and Document No. 6 with the redaction noted above to Plaintiff within seven days of the date of this Memorandum Opinion and Order.  It is further

**ORDERED** that Plaintiff's motion is denied in all other respects.


**SO ORDERED.**


Date:  November 19, 2019

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE