**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSEPH MISCHLER,

          *Plaintiff*,

   v.

NOVAGRAAF GROUP BV *et al.*,

        *Defendants*.

Civil Action No. 18-2002 (TJK)

<u>**MEMORANDUM OPINION**</u>

    Joseph Mischler sued Novagraaf Group BV, an international patent and trademark consultancy, for alleged violations of District of Columbia labor laws and common law breach of contract stemming from Novagraaf's termination of his purported employment.  From the start of the case, Mischler has argued that he was an employee of Novagraaf's, so he can recover lost wages and certain other benefits protected by statute.  Novagraaf, in contrast, has sought to characterize Mischler as an independent contractor, so he cannot.  The parties have cross-moved for summary judgment.  The Court will grant Novagraaf's motion and deny Mischler's on the statutory claims because it concludes that Mischler was an independent contractor, and it will deny both motions as to the contract claim.

**I.**    **Background**

    Novagraaf Group BV provides intellectual property advisory services.  The company is based in the Netherlands, but this dispute stems from its interest in expanding its reach into the United States.  In May 2016, Novagraaf and Joseph Mischler agreed that Mischler would serve as Novagraaf's Vice President and Managing Director of Novagraaf Americas.  The final terms were memorialized in a Management Services Agreement ("MSA"), which specified, among other things, Mischler's responsibilities, compensation structure, and the circumstances of his departure.

*See* ECF No. 145-7 at 2. Mischler's principal responsibility was to sell Novagraaf's services in the United States, including by identifying potential new clients. The arrangement enabled Mischler to acquire equity in Novagraaf under a separate Participation and Shareholders' Agreement ("PSA"). ECF 145-5 at 31.

But a few years in, the relationship soured. Novagraaf felt that Mischler was not performing at the level it had hoped, and it ended their arrangement in July 2018. ECF No. 145-6 ¶¶ 49–50. Not long after, Mischler sued Novagraaf in District of Columbia Superior Court asserting claims for lost wages under the D.C. Wage Payment Collection Law ("DCWPCL"), breach of contract under D.C. common law, and failure to provide paid sick leave under the D.C. Sick Leave Act ("Sick Leave Act"). Novagraaf removed this case to this Court.

Novagraaf then invoked a "Bad Leaver" provision of the PSA and effectively reclaimed Novagraaf's shares that Mischler had acquired. Novagraaf claimed that Mischler had violated his confidentiality obligations under the MSA when he sued, thus making him a "Bad Leaver." In response, Mischler amended his complaint to include a retaliation claim under the DCWPCL. ECF No. 7-1 ¶¶ 38–44. The Court also granted Mischler leave to file his Second Amended Complaint and name Novagraaf CEO Lutgarde Liezenberg as a defendant. ECF No. 51. Novagraaf then asserted a counterclaim that Mischler had engaged in fraud over his reported sales commissions. ECF No. 53 at 8–9. After discovery, the parties cross-moved for summary judgment on all counts of the Second Amended Complaint, ECF Nos. 89, 99, and for summary judgment on Novagraaf's fraud claims, ECF No. 90, 100. Around the same time, Liezenberg filed several motions for summary judgment of her own. The Court granted summary judgment to Mischler on Novagraaf's fraud claim and denied Liezenberg's motions. ECF No. 160. Remaining are Novagraaf's and

Mischler's cross-motions for summary judgment.[1]  As noted above, the statutory claims turn on whether Mischler was Novagraaf's employee or an independent contractor.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).  To survive summary judgment, a plaintiff must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation omitted).  Courts "are not to make credibility determinations or weigh the evidence." *Lopez*, 826 F.3d at 496 (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)).  But the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

---

[1] There are no distinct claims against Liezenburg, but she has joined Novagraaf's motion.  ECF No. 131 at 1.

### III.    Analysis

### A.    DCWPCL and Sick Leave Act Claims (Counts I-III and V)

Mischler argues that upon his termination, Novagraaf should have paid him certain commissions and equity (Count I) and that Novagraaf failed to pay him with the required frequency during his alleged employment there (Count II).  Mischler also alleges that Novagraaf retaliated against him after he questioned whether he was receiving all his compensation (Count III).  And finally, Mischler claims that he is entitled to certain sick leave he never received (Count V).  Novagraaf argues that it is entitled to summary judgment on these counts because Mischler was an independent contractor who cannot recover under the relevant laws.

The Court agrees with the parties that the threshold question governing Mischler's ability to recover on these counts is whether he was Novagraaf's employee.  The relevant statutory protections extend only to employees, not to independent contractors.[2]  *See Medina v. Kevorkian Cleaning Co.*, 444 F. Supp. 3d 204, 211–12 (D.D.C. 2020).  The DCWPCL, the Sick Leave Act, and the Fair Labor Standards Act ("FLSA") include almost identical definitions of an employee and are "construed consistently" in this regard.[3]  *Id.*  And "determinations of employer or employee status under the FLSA apply equally under District of Columbia wage laws."  *Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139, 146 (D.D.C. 2011).

___

[2] The retaliation provision of the DCWPCL states that "it shall be unlawful for any employer to discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee *or person* because that employee or person has . . . made or is believed to have made a complaint to his or her employer."  D.C. Code § 32-1311 (emphasis added).  Mischler argues he was an employee, but he does not argue in the alternative that even if he were an independent contractor he would qualify for protection as a "person."  ECF No. 99-1 at 35.

[3] The DCWPCL defines "employee" as including "any person suffered or permitted to work by an employer."  D.C. Code § 32-1301.  The FLSA defines "employee" as "any individual employed by an employer" and defines "employ" as "to suffer or permit to work."  29 U.S.C. § 203(e)(1), (g).  The Sick Leave Act defines employee as one "employed by an employer" and specifically excludes "independent contractor[s]."  D.C. Code § 32-531.01(2).

Whether a worker is an employee or an independent contractor under these statutes is a question of law that can be resolved at summary judgment, although it is dependent on subsidiary factual questions that may present genuine disputes of material fact. *Thompson*, 779 F. Supp. 2d at 147. Courts look to the "economic reality" of the relationship between the parties to resolve this question. *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961). And the D.C. Circuit has articulated four factors to aid courts in this analysis: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001). At the same time, the Circuit has also cited with approval five "different, although similar" factors, including: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship and (5) the extent to which the work is an integral part of the employer's business." *Id.* Either way, "there is no shorthand formula or magic phrase that can be applied to find the answer, but all the incidents of the relationship must be assessed and weighed with no one factor being decisive." *FedEx Home Delivery v. NLRB*, 563 F.3d 492, 496 (D.C. Cir. 2009) (quoting *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258, (1968)).

After thorough consideration of the record, the Court holds that Mischler was an independent contractor. Thus, Novagraaf is entitled to summary judgment on Counts I, II, III, and V of Mischler's Second Amended Complaint.

### 1.    Novagraaf's Control Over Mischler

Mischler argues that Novagraaf exercised a significant control over his work, and he points specifically to his frequent contact with Novagraaf and its control over his compensation. ECF

No. 99-1 at 11–12.  Novagraaf argues, to the contrary, that Mischler was free to conduct his duties any way he saw fit.  A close review of the record reveals that the parties do not dispute most of the key facts relevant to this factor.[4]

To begin with, the record makes clear that Novagraaf did not control Mischler's schedule or day-to-day work.  Mischler conceded that sort of control was "impossible" given the nature of what he was doing.  ECF No. 89-6 at 15.  Mischler did not need to work a certain number of hours per week, and Novagraaf did not monitor his sick days or where he was working.  In like manner, Mischler did not need approval to travel domestically or incur business-related expenses, and Novagraaf did not direct Mischler to pursue specific clients.  On this record, Mischler possessed significant autonomy to perform his core responsibility—pursuing sales opportunities—without Novagraaf's control.

Another important point: Mischler was free to pursue other employment opportunities while working for Novagraaf.  Mischler testified he sought work from other companies then, ECF No. 89-6 at 36–37, and Novagraaf maintains that it lacked the authority to force Mischler to turn work down, ECF No. 145-6 ¶ 15.  For his part, Mischler agrees that Novagraaf did not have that authority.  ECF No. 89-6 at 37.  Mischler argues only that because he was working long hours, he did not have the time to exploit other opportunities.  In any event, that the parties agree Mischler

---

[4] As part of summary judgment briefing, each party prepared a "Statement of Undisputed Material Facts."  ECF Nos. 89-1, 99-3.  The parties then filed responses admitting or disputing each fact.  ECF Nos. 99-2, 111-1.  Although these documents contain hundreds of allegedly disputed facts, the disputes are rarely "genuine" in that they are based on evidence that truly conflicts.  And even so, to survive summary judgment, a party must present a dispute that is not only genuine but material.  Fed. R. Civ. P. 56(a).  Thus, the Court focuses on the undisputed facts established in the record and any material disputes affecting the legal questions relevant to the summary judgment calculus.

was free to do so strongly suggests that he was an independent contractor, rather than an employee. For all these reasons, this factor supports Mischler's status as an independent contractor.

In arguing to the contrary, Mischler cites testimony suggesting that at times, he communicated with Gerard Delaney, his handler at Novagraaf, four or five times per day. ECF No. 99-37 at 105–06. But at the same time, Mischler admitted in his deposition that he did not have a "day-to-day call check in" and that their communication was usually several times per week. ECF Nos. 89-6 at 10–11; 99-37 at 106. And as Novagraaf points out, nothing in the record suggests that the contents of these communications reflect that Novagraaf was *controlling* Mischler rather than asking about his results. So even viewing the evidence on this point in the light most favorable to Mischler, the control factor still favors his status as an independent contractor.

Mischler also argues that the resources Novagraaf provided to him—for example, an office, computer, phone, and subordinates—all reflect Novagraaf's control over his work. ECF No. 99-1 at 11. Not so. The record does not suggest that these resources were anything but reimbursable expenses that Novagraaf provided to him to facilitate his work. And nothing suggests that Novergraaf exercised direct control over Mischler through these resources. For example, Novagraaf did not pick who Mischler hired to help him do his job.

### 2.    Mischler's Compensation and the Parties' Tax Records

Courts also evaluate how a worker is compensated and the opportunity for profit or loss in the business. *Thompson*, 779 F. Supp. 2d at 147. Thus, courts consider if the worker's own efforts determined his pay and whether a worker's compensation fluctuated with the ultimate success of the business, which tend to suggest the worker is an independent contractor. Similarly, a company's "employment records" also bear on a worker's classification. *Morrison*, 253 F.3d at 11.

Mischler was paid a combination of a fixed sum and commissions from his sales performance. ECF No. 99-37 at 27. His "management fee" was paid in monthly installments, and his commissions were tied to Novagraaf's profit margin on each sale he completed. *Id.* at 30, 37–42. Mischler submitted monthly invoices that reflected his management fee for that month and his reimbursable expenses, such as work-related travel. *Id.* at 30. And Novagraaf paid commissions quarterly, after calculating actual earnings following the estimates in a salesperson's commission reports. ECF No. 145-4 ¶ 15. Novagraaf did not pay for Mischler's health insurance, retirement, disability, or similar benefits. Instead, Novagraaf paid him an additional administrative fee of no more than $20,000 for Mischler to arrange for his health insurance as he saw fit. ECF No. 99-37 at 31–32. Novagraaf did not set up a 401(k) for Mischler, which it did for other employees. ECF No. 89-6 at 59–61.

That Mischler received something like a fixed salary each month supports employee status. But just about everything else related to this factor points in the opposite direction. The opportunity to earn large commissions suggests he was an independent contractor, and Mischler conceded his income was directly related to the work he personally completed. ECF No. 89-6 at 32–33. That Mischler submitted monthly invoices reflecting his management fee rather than received a salary tracks an independent contractor's economic reality, even if he were entitled to a portion of his year-end management fee each month. Likewise, that Mischler arranged for and bought his own health insurance and similar benefits contradicts employee status, as does his omission from Novagraaf's 401(k) plan. *Cf. Cmty for Creative Non-Violence v. Reid*, 490 U.S. 730, 753 (1989) (explaining that under general agency principles failure to "provide any employee benefits" reflects an independent contractor arrangement).

Tax records tell a similar story.  Novagraaf supplied Mischler an I.R.S. Form 1099, the earnings document typically used for independent contractors, and never provided him a W-2.  ECF No. 89-6 at 25, 50.  For his part, Mischler represented on his own tax returns that his income came from a sole proprietorship named "JOSEPH MISCHLER" rather than from Novagraaf.  ECF No. 91-6 at 5–19.  Mischler also paid his own self-employment taxes, which Novagraaf never reimbursed.  ECF No. 89-6 at 51.  Mischler acknowledges that he began as an independent contractor but argues that Novagraaf *should* have formalized his employee status and supplied him with a W-2 with proper withholdings at some point.  *Id.* at 31.  But in the end, what Mischler says *should* have happened says little about the economic reality of the parties' actual relationship.

Despite all the above, Mischler argues that Novagraaf provided him signed verification that it considered him an employee.  He points to a "Employment Verification Form" Delaney completed in support of his mortgage application to Fannie Mae.  ECF No. 99-1 at 10.  Delaney represented that Mischler was Novagraaf's "Vice President and General Manager" of Novagraaf's North America operations and stated that the probability of Mischler's continued employment was "high."  ECF Nos. 99-1 at 10, 99-12.  But this form is hardly part of Mischler's "employment records," as contemplated in *Morrison*.  253 F.3d at 11.

### 3.    Whether Mischler was Integral to Novagraaf's Business

Another factor the Court must weigh is whether the role Mischler performed was integral to the company's business.  *Morrison*, 253 F.3d at 11.  The more integral Mischler was to Novagraaf, the more likely he was an employee.  Mischler points to several statements from coworkers that he was a "key participant" in Novagraaf's business.  ECF No. 99-1 at 32–33.  This factor, however, is focused less on Mischler's importance or skill as a salesperson and more on whether the sales function is integral to Novagraaf's overall business.

Novagraaf is an international patent and trademark consultancy, akin to a law firm; its core business is to advise clients on these matters. *See, e.g.*, ECF No. 92-3 at 1. Of course, a firm needs clients, and sales personnel are tasked with drumming up business. But it belies common sense that a salesperson—even one with Mischler's purported experience and talent—plays an integral role in a consultancy or law firm's business functions. Mischler's job was to sell Novagraaf's services to potential clients, but Novagraaf's attorneys delivered those services, thereby driving revenue. Even if Mischler had a hand in boosting Novagraaf's revenues, he was not integral to the business. After all, before 2016, Novagraaf attorneys made sales and landed new clients without him, or any other salesperson in the United States. *Id.* at 2. Like the others, this factor favors his status as an independent contractor.

### 4.    The Duration and Permanence of the Parties' Relationship

Typically, the more permanent the work arrangement, the more likely that an employer-employee relationship exists. *See Thompson*, 779 F. Supp. 2d at 150. Mischler and Novagraaf signed the MSA in May 2016, and Novagraaf terminated the contract in July 2018. ECF No. 145-6 ¶¶ 20, 50. So not much can be gleaned solely from the length of this relationship. The parties intended the arrangement to be ongoing, but two years is hardly enough to conclude, without more, that Novagraaf employed Mischler. *Cf. Thompson*, 779 F. Supp. 2d at 150 (explaining that 12-year and 5-year work relationship supported conclusion that worker was an employee). That both parties could terminate the contract, however, is telling. Either party could terminate the contract at will within the first four months or with three-months' notice afterward. ECF No. 145-7 at 6. The MSA also authorized Novagraaf to terminate Mischler without notice in some cases if Mischler breached the contract. *Id.* at 6–7. That both parties had latitude to end the arrangement suggests

Mischler worked as an independent contractor. In any event, the Court does not weigh this factor very heavily.

*    *    *

In sum, the Court finds that Novagraaf engaged Mischler to work as an independent contractor. The parties spill considerable ink arguing over the precise language of the MSA and their correspondence negotiating it. But "[f]acile labels and subjective factors are only relevant to the extent that they mirror economic reality." *Morrison*, 253 F.3d at 11 (cleaned up). And the "economic reality"—as reflected in the above factors—is that Mischler enjoyed substantial autonomy to conduct his sales responsibilities, set his strategic objectives and schedule, controlled most of his own compensation in the form of commissions, and served in a role that was distinct from Novagraaf's core business.[5] Because Mischler was an independent contractor, he cannot recover under the DCWPCL and Sick Leave Act. Thus, the Court must grant summary judgment in Novagraaf's favor on Counts I, II, III, and V.

## B.    Breach of Contract Claim (Count IV)

Mischler also asserts that Novagraaf breached the MSA. Novagraaf seeks summary judgment on this claim, arguing that Mischler has insufficient evidence to make out the last element: damages. Mischler cross-moves for summary judgment as to liability only, arguing that Novagraaf has admitted that it breached the MSA. He argues that the exact amount of damages should be determined by a jury. ECF 99-1 at 40–41.

To prevail on a breach of contract claim under District of Columbia law, a party must show "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a

---

[5] In any event, the MSA is laden with language stating that Mischler was an independent contractor which mirrors the economic reality of the arrangement. *See, e.g.*, ECF No. 145-8 at 29, § 13.7. And that language was added at Mischler's request. ECF No. 145-7 at 20.

breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). To survive summary judgment, "a plaintiff need not . . . show the amount of damages; he is obligated [only] to show that they exist and are not entirely speculative." *Cormier v. D.C. Water and Sewer Auth.*, 959 A.2d 658, 667 (D.C. 2008). And although juries may award monetary damages based only on a "reasonable basis on which to estimate damages," *Zoerb v. Barton Protective Servs.*, 851 A.2d 465, 471 (D.C. 2004), a "sufficient showing with respect to . . . *the fact* of damages" is enough to "foreclose the entry of summary judgment." *Cormier*, 959 A.2d at 668.

Disputed issues of material fact prevent the Court from awarding summary judgment for either party on Mischler's contract claim. Novagraaf argues that Mischler failed to disclose any computations and evidence for his claimed damages in his initial disclosures and that the Federal Rules of Civil Procedure preclude him from relying on a July 2018 commission report he produced later to prove up the amount of his damages. ECF No. 89 at 34–36. But Mischler need not prove the amount of damages at this stage. The record reflects a genuine dispute about *the fact of damages*, whether in the form of some unpaid commissions—including commissions Novagraaf disputes it owes Mischler based on his subordinate's sales—or equity that Novagraaf reclaimed from Mischler. To be sure, Mischler may well struggle to furnish enough evidence for a jury to have a "reasonable basis on which to estimate damages," *Zoerb*, 851 A.2d at 471, and so a jury may limit any recovery of his to "nominal damages," *Window Specialists, Inc. v. Forney Enters., Inc.*, 106 F. Supp. 3d 64, 92 (D.D.C. 2015). But summary judgment is not appropriate "when the plaintiff has shown the existence of a genuine and material question as to whether he or she suffered *some* compensable damage," as here. *Cormier*, 959 A.2d at 668.

The Court will also decline to award Mischler summary judgment solely on the issue of liability. Disputes about the scope of Novagraaf's breach of contract are too intertwined with disputes about the amount of damages to grant summary judgment. And Mischler has cited no case in which a court granted partial summary judgment on liability under these circumstances. For these reasons, the Court will deny both parties' motions for summary judgment as to Count IV.

## IV.    Conclusion

For all the above reasons, the Court will grant Novagraaf's motion for summary judgment and deny Mischler's as to Counts I, II, III, and V, and deny both motions as to Count IV. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 28, 2022